**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDVIN JAKOBSEN, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| APHRIA INC., and VICTOR NEUFELD, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Edvin Jakobsen ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Aphria Inc. ("Aphria" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Aphria; and (c) review of other publicly available information concerning Aphria.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Aphria securities between July 17, 2018 and December 4, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Aphria purportedly produces and sells medical cannabis.

3.      On December 3, 2018, Quintessential Capital Management and Hindenburg Research published a report alleging, among other things, that the Company's recent acquisitions in Latin America were part of a series of transactions designed to enrich Company insiders and that these acquisitions lacked established operations.

4.      On this news, the Company's share price fell $1.85 per share, or over 23%, to close at $6.05 per share on December 3, 2018, on unusually heavy trading volume.

5.      On December 4, 2018, the Company denied the claims made in the report. The Company stated, among other things, that it had received "a fairness opinion from Cormark Securities Inc., the Company's independent and qualified financial advisor, that the consideration to be offered by Aphria in respect of the transaction was fair" and that the Company had conducted due diligence regarding the assets to be acquired.

6.      On this news, the Company's share price fell $1.54 per share, or over 25%, to close at $4.51 per share on December 4, 2018, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Latin American assets acquired by the Company lacked adequate licenses to operate and were overvalued; (2) that the acquisition of the Latin American assets would enrich the Company's CEO and other insiders at the expense of shareholders; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Edvin Jakobsen, as set forth in the accompanying certification,

incorporated by reference herein, purchased Aphria securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Aphria is incorporated under the laws of Ontario, Canada with its registered office located in Toronto, Ontario, Canada.  Aphria's common stock trades on the Toronto Stock Exchange under the symbol "APH." In the US, Aphria's common stock traded over-the-counter on the OTCQB Venture Market exchange under the symbol "APHQF" until November 2, 2018, when it began trading on the New York Stock Exchange ("NYSE") under the symbol "APHA."

15.     Defendant Victor Neufeld ("Neufeld") was the President, Chief Executive Officer, and Chairman of the Board of Directors of the Company at all relevant times. Defendant Neufeld is also referred to herein as the Individual Defendant. Defendant Neufeld, because of his positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, his issuance and had the ability and opportunity to prevent his issuance or cause them to be corrected.  Because of his positions and access to material non-public information available to them, the Individual Defendant knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendant is liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Aphria purportedly produces and sells medical cannabis.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on July 17, 2018. On that day, the Company announced

its plans to acquire "industry-leading companies in Colombia, Argentina, Jamaica and a right of first offer and refusal in respect of Brazil through a definitive share purchase agreement with Scythian Biosciences, Inc. ("Scythian"). Aphria will acquire 100% of the issued and outstanding common shares of LATAM Holdings Inc. ("LATAM Holdings"), a direct, wholly-owned subsidiary of Scythian." In a press release, the Company stated, in relevant part:

**Highlights of the Transaction include:**

- Solidifies Aphria's leadership position in the global cannabis industry

- Provides Aphria with world class assets in the most advanced regulatory jurisdictions across LATAM and Caribbean markets, from which it can further grow and expand its international operations

- Strengthens Aphria's leading international management team with the addition of proven local LATAM and Caribbean executives

- Establishes Aphria's presence in the most advanced strategic market in South America, Colombia

- Gains first mover advantage in Argentina for eventual in country cultivation

- Acquires market leadership in Jamaica with the only producing Tier 3 cultivator license in the country

- Yields strategic rights to potentially expand into Brazil, the largest population in South America

- Delivers accretive cash flow beginning in calendar 2019

**Colombia – Strategic Launch Pad into South America**

Colcanna S.A.S. ("**Colcanna**" or the "**Colombian Company**"), will be the first company in the Coffee Zone of Colombia with cultivation and manufacturing licenses for the production of medicinal extracts of cannabis, a research license and a license for the production and extraction of cannabis, including cannabis oil, for domestic use and for export. It is in the advanced licensing stages for a THC license.

Unlike the former Guerilla territory where other global cannabis companies have focused his investments, the Coffee Zone has always been a land of peace, high productivity and progress. Colcanna sits on 34 acres of highly fertile, predominately flat land, which is essential for the optimal cultivation of cannabis. As a result, greenhouses will occupy more than 20 acres of the property and, with 6 harvests per year and two natural sources of water for irrigation, Colcanna is expected to achieve an initial annualized production of 30,000 kg, growing to

50,000 kgs but with access to the country's micro-scale growers, suitable for supplying the country and the region with high-quality medical cannabis.

**Argentina – First Mover Advantage**

ABP, S.A. ("**ABP**" or the "**Argentinean Company**") is an established and successful pharmaceutical import and distribution company that holds a series of licenses, including for the import of CBD oil, notably the first company in Argentina to have received this license.

The Argentinean Company operates a pharmaceutical distribution warehouse and retail pharmacy and distributes to an extensive network of pharmacies, distributors, government clinics and hospitals throughout Argentina.  ABP also holds agreements with the Top 20 health insurance companies, a strategic advantage in reaching patients accessing Argentina's free public healthcare system.

ABP is at the forefront of in-country medical cannabis research and clinical trials with two significant Medical Cannabis Cooperative Agreements. The Argentinean Company has partnered with Hospital Garrahan, a leading pediatric hospital in Buenos Aires, for a clinical study on the treatment of refractory epilepsy in children, and with Universidad Nacional De La Plata to support advances in medical cannabis research and education.

**Jamaica – Only Producing Commercial Tier 3 License**

Marigold Projects Jamaica Limited ("**Marigold**" or the "**Jamaican Company**") has been granted several key licenses by the Jamaican Cannabis Licensing Authority, including:

- A Tier 3 license to cultivate more than five acres of land with cannabis for medical, scientific and therapeutic purposes. This license is the highest level of license available in Jamaica, and currently only one other company has been approved for a Tier 3 license;

- A conditional Tier 2 license to process cannabis for medical, scientific and therapeutic purposes, including the manufacturing of cannabis-based products, in a space of over 200 square meters;

- A conditional herb house retail license to sell cannabis products for medical, scientific and therapeutic purposes, with a space for immediate consumption by consumers, including tourists;

- A conditional therapeutic retail license to provide therapeutic or spa services utilizing cannabis products; and

- A conditional R&D license.

Lloyd Tomlinson will continue as Marigold's Managing Director and will be appointed Director, Jamaica Operations at Aphria International. Mr. Tomlinson, a

Jamaican native, has more than 20 years' experience in the pharmaceutical industry and as the CEO of Blue Manhoe Estate he became the third-generation of his family to run the family's coffee business. In 2014, Mr. Tomlinson made history when he launched Timeless Herbal Care, Jamaica's first medical cannabis company.

**Brazil – Strategic Option for Major Market**

The Company also remains focused on identifying the most attractive emerging opportunities through the region, including in Brazil where, as a result of the Transaction, the Company will receive a right of first offer and refusal (collectively the "**Rights**") in respect of a majority interest, upon the receipt of a license, in the entity receiving the license. With a population over 200 million and a comprehensive National Healthcare System, Brazil is poised to become an important market for medical cannabis, and Aphria's regional and corporate leadership remain connected to the rapidly evolving opportunity in Brazil.

\* \* \*

Aphria will acquire the following entities through LATAM Holdings:

- 90% of Colcanna, a Colombian medical cannabis producer, currently holding a CBD cultivation license from the Ministry of Justice and holding a license for processing, extraction, production and research for the local market and export for the international market of cannabis derivatives, from the Ministry of Health. Colcanna expects to receive its THC license from the Ministry of Justice within the next month;

- 100% of ABP, an Argentinean pharmaceutical import and distribution company, currently licensed for the importation of CBD oil for the purposes of research and development;

- 100% of Marigold Acquisitions Inc., a BC incorporated entity, which owns 100% of Hampstead Holdings Ltd., a Bermuda incorporated entity, which owns 49% of Marigold Projects Jamaica Limited, which has received a license to cultivate and conditional licenses to process, sell and provide therapeutic or spa services using cannabis products; and,

- The Rights to purchase 50.1% of a Brazilian incorporated entity, which Scythian is currently seeking to acquire, which is expected to hold a medical cannabis cultivation, processing and distribution license in Brazil, upon receipt of a license, for $24 million USD, and an additional right of first refusal to acquire an additional 20-39% of the same entity at fair market value at the time.

\* \* \*

The Board of Directors of Aphria has received a fairness opinion from Cormark Securities that, as of July 16, 2018, and subject to the assumptions, limitations and qualifications on which such opinions are based, the consideration to be offered

by Aphria in respect of the Transaction is fair, from a financial point of view, to Aphria. The eligible directors of Aphria, after receiving legal and financial advice, have unanimously approved the Transaction.

18.    On September 27, 2018, the Company announced that it had closed the acquisition of LATAM Holdings Inc., pursuant to the terms announced on July 17, 2018.

19.    The above statements identified in ¶¶17-18 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Latin American assets acquired by the Company lacked adequate licenses to operate and were overvalued; (2) that the acquisition of the Latin American assets would enrich the Company's CEO and other insiders at the expense of shareholders; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

20.    On December 3, 2018, Quintessential Capital Management and Hindenburg Research published a report alleging, among other things, that the Company's recent acquisitions in Latin America were part of a series of transactions designed to enrich Company insiders and that these acquisitions lacked established operations and/or licenses to operate in the cannabis industry. The report summarized its findings:

We believe Aphria has diverted shareholder assets to insiders through a systematic process:

1.    Aphria insider Andy DeFrancesco sets up or acquires an international company, providing a token justification for an acquisition (e.g., conditional cannabis licenses, a leased facility, purchasing a small existing local business.)

2.    The international company is then purchased by a Canadian shell company under the control of DeFrancesco through his closely held private equity firm, the Delavaco Group.

3.    The shell company agrees to be acquired by Aphria's 'sister' company, Scythian Biosciences, where Vic Neufeld, Aphria's Chairman/CEO, and DeFrancesco hold key insider roles.

4.    Scythian then sells its stake in the entity to Aphria at a large markup.

     5.    As a result, DeFrancesco and unnamed associates get cash and/or Scythian shares, Scythian gets cash and/or Aphria shares, and Aphria's shareholders get international assets that are essentially worthless.

21.    On this news, the Company's share price fell $1.85 per share, or over 23%, to close at $6.05 per share on December 3, 2018, on unusually heavy trading volume.

22.    On December 4, 2018, the Company responded that it "unequivocally stands behind its LATAM Operations." Moreover, the Company stated, in relevant part:

> Aphria is committed to good corporate governance and transparency. The LATAM acquisition was a transaction negotiated at arms' length between two publicly traded companies each of which retained professional financial advisors (one of which provided a formal valuation of the acquired assets). Aphria and SOL Global Investments Corp. (formerly Scythian Biosciences Corp.) ("SOL") are not "sister" companies and were not "sister" companies at the time the Transaction was agreed to between the parties.

> In connection with the Transaction, the Company notes, among other things, the following:

- The Board of Directors of Aphria received financial advice and a fairness opinion from Cormark Securities Inc., the Company's independent and qualified financial advisor, that the consideration to be offered by Aphria in respect of the transaction was fair, from a financial point of view, to Aphria.

- The Company believes that the purchase price paid under the Transaction was comparable with similar Latin America acquisitions by other large cap, Canadian licensed producers.

- The Transaction resulted in minimal dilution to Aphria shareholders (6.6% basic / 6.3% fully diluted).

- The Company retained leading transaction counsel in each jurisdiction who completed extensive legal due diligence on the assets, licenses and businesses in each jurisdiction.

- Representatives of Aphria travelled to Colombia, Argentina, Jamaica and Brazil to conduct due diligence regarding the assets to be acquired which included management meetings, site visits by senior management in each country and meetings with local authorized representatives.

- The Company entered into a negotiated share purchase agreement with SOL in connection with the Transaction which contained extensive representations, warranties, covenants, conditions and indemnities which survived the closing of the Transaction.

- In its press release announcing the transaction, the Company transparently disclosed that certain insiders of Aphria owned a de minimis amount of shares and warrants of SOL and that such insiders had disclosed such interests to the Board of Directors and recused themselves from the deliberations during which the Transaction was discussed and from voting on the resolution approving the Transaction.

Since the completion of the Transaction, the Company has successfully integrated the operations in each jurisdiction, and provides the following updates:

**Colombia**

- Aphria owns a 90% interest in Colcanna S.A.S. ("Colcanna"). Colcanna has received all required licenses for cultivation, processing, export, research and commercialization.

- Colcanna sits on 34 acres of highly fertile, predominately flat land, which is essential for the optimal cultivation of cannabis, including the greenhouse which sits on the acreage that recently housed mother plants.

- The Company has recently signed a Promissory Letter for the purchase of the additional 8 hectares of land immediately adjacent to existing property for expansion.

- Colcanna is licensed to cultivate psychoactive and non-psychoactive cannabis. The licenses held by Colcanna also permit cultivation, export, research and processing.

- Colcanna was also granted by the Colombian Agricultural Institute, on October 30, 2018 a characterization permit pursuant to Resolution No. 35244 and No. 35245 allowing the company to assess seeds and initiated a pilot test of its strains prior to full scale cultivation.

- Greenhouses are planned for more than 20 acres of the property, with 6 harvests expected per year.

- Colcanna is expected to achieve an initial annualized production of 30,000 kg, growing to up to 50,000 kgs, suitable for supplying the country and the region with high-quality medical cannabis.

- There are 48 employees in Columbia, dedicated to cultivation and advancing business interests.

**Jamaica**

- Marigold is fully operational with:

  - An issued Tier 3 license to cultivate more than five acres of land with cannabis for medical, scientific and therapeutic purposes;

- An issued Research and Development License;

- A conditional Tier 2 license to process cannabis for medical, scientific and therapeutic purposes, including the manufacturing of cannabis-based products, in a space of over 200 square meters;

- A conditional herb house retail license to sell cannabis products for medical, scientific and therapeutic purposes, with a space for immediate consumption by consumers, including tourists; and

- A conditional therapeutic retail license to provide therapeutic or spa services utilizing cannabis products.

- Marigold's cultivation farm is operational and has harvested approximately 2,500 kg of cannabis to date.

- The Company has taken possession of 10 acres of land at Block B, Lot 2, part of Bernard Lodge, St. Catherine, from the Sugar Company of Jamaica in anticipation of expanding its cultivation as demand dictates.

- Two Herb House locations, the first in Kingston, namely the Sensi Medical Cannabis House, and the second, Portmore, are expected to open in January 2019, additional locations are currently planned for other high demand regions of Jamaica.

- Jamaica boasts 22 employees dedicated to the cultivation, processing and operations of the facility and maintenance of the corporate brand.

**Argentina**

- Aphria's subsidiary in Argentina, ABP, is a well-established and successful pharmaceutical import and distribution company.

- ABP is championing the research and clinical study of medical cannabis, including through its partnership with Hospital de Pediatria Garrahan, one of the most recognized and credible medical institutions in South America.

- In October 2018, ABP delivered 1,500 bottles of Aphria's renowned Rideau CBD oil, which were provided to Hospital de Pediatria Garrahan for use in a clinical study focused on treating refractory epilepsy in children. The clinical study, which involves 100 patients and will be conducted over 2.5 years, will be one of the foundational global scientific and medical studies of its kind focused on treating refractory epilepsy in children.

- In order to undergo its ISO 9001 inspection on October 25, 2018, ABP engaged in a retrofit of the building in October 2018.

- Aphria and ABP, in close partnership with the Argentinean government, continue to advance opportunities for medical cannabis in the country, including the potential for in-country cultivation.

- APB operates a pharmaceutical distribution warehouse and retail pharmacy and distributes to an extensive network of pharmacies, distributors, government clinics and hospitals throughout Argentina.

- ABP also holds agreements with the Top 20 health insurance companies, a strategic advantage in reaching patients accessing Argentina's free public healthcare system.

    "Aphria has developed and launched a comprehensive suite of brands, built a roster of strategic partners and continues to focus on research, innovation and product development in Canada and internationally. Aphria has experienced tremendous growth and will continue to lead the evolution of the industry in the years to come. It is the commitment of our incredible team and partners that has gotten us to where we are today, making Aphria a global cannabis success story," added Mr. Neufeld.

    "Yesterday, I, along with other members of our Executive Management team, stepped up to demonstrate our confidence in the Company's business plan, growth strategy, integrity and value of the assets by personally investing more than $3.1 million in Aphria's common shares," concluded Mr. Neufeld.

23.     On this news, the Company's share price fell $1.54 per share, or over 25%, to close at $4.51 per share on December 4, 2018, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Aphria securities between July 17, 2018 and December 4, 2018, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of his immediate families and his legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aphria's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Aphria common stock were traded publicly during the Class Period on the NYSE. Record owners and other members

of the Class may be identified from records maintained by Aphria or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Aphria; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**<ins>UNDISCLOSED ADVERSE FACTS</ins>**

30.     The market for Aphria's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures

to disclose, Aphria's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Aphria's securities relying upon the integrity of the market price of the Company's securities and market information relating to Aphria, and have been damaged thereby.

31.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Aphria's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Aphria's business, operations, and prospects as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Aphria's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

33.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34.     During the Class Period, Plaintiff and the Class purchased Aphria's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

<u>**SCIENTER ALLEGATIONS**</u>

35.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendant, by virtue of his receipt of information reflecting the true facts regarding Aphria, his control over, and/or receipt and/or modification of Aphria's allegedly materially misleading misstatements and/or his associations with the Company which made them privy to confidential proprietary information concerning Aphria, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

36.     The market for Aphria's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Aphria's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Aphria's securities and market information relating to Aphria, and have been damaged thereby.

37.     During the Class Period, the artificial inflation of Aphria's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Aphria's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Aphria and its business, operations, and prospects, thus causing the price of the Company's securities to be

artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38.     At all relevant times, the market for Aphria's securities was an efficient market for the following reasons, among others:

(a)     Aphria shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Aphria filed periodic public reports with the SEC and/or the NYSE;

(c)     Aphria regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Aphria was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of his respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

39.     As a result of the foregoing, the market for Aphria's securities promptly digested current information regarding Aphria from all publicly available sources and reflected such information in Aphria's share price. Under these circumstances, all purchasers of Aphria's securities during the Class Period suffered similar injury through his purchase of Aphria's securities at artificially inflated prices and a presumption of reliance applies.

40.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial

prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Aphria who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

42.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

43.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Aphria's securities at artificially inflated prices.  In

furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

44.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Aphria's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Aphria's financial well-being and prospects, as specified herein.

46.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Aphria's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Aphria and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47.     Each of the Individual Defendant's primary liability and controlling person liability arises from the following facts: (i) the Individual Defendant was a high-level executive and/or director at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and

participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Aphria's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Aphria's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Aphria's securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of his falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Aphria was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired his Aphria securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with his respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendant

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     Individual Defendant acted as controlling persons of Aphria within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level positions and his ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendant had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendant was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, Individual Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.     As set forth above, Aphria and Individual Defendant each violated Section 10(b) and Rule 10b-5 by his acts and omissions as alleged in this Complaint. By virtue of his position as controlling persons, Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with his purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class his reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 5, 2018

**GLANCY PRONGAY & MURRAY LLP**

By:  /s/ *Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, New York 10169
Telephone:  (212) 682-5340
Facsimile:  (212) 884-0988

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Edvin Jakobsen*

Aphria, Inc, **SECURITIES LITIGATION**

I, Edvin Jakobsen, certify:

1. I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2. I did not purchase Aphria, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Aphria. Inc., during the class period set forth in the Complaint are as follows:

     See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

     ____ ☐ Check here if you are a current employee or former employee of the defendant Company.

     I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: ___04.12.18___

(Please Sign Your Name Above)

**Edvin Jakobsen's Transactions in Aphira Inc. (APHA)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 11/13/2018 | Bought | 64 | $10.9000 |
| 11/15/2018 | Bought | 80 | $9.5300 |
| 11/20/2018 | Bought | 46 | $8.9500 |
| 12/3/2018 | Sold | -100 | $6.7000 |
| 12/3/2018 | Sold | -90 | $6.7000 |