UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
                                          :
                                          :
                                          :     MEMORANDUM DECISION
IN RE APHRIA, INC. SECURITIES LITIGATION  :        AND ORDER
                                          :
                                          :     18 Civ. 11376 (GBD) (JW)
                                          :
                                          :
------------------------------------------x

GEORGE B. DANIELS, United States District Judge:

Proposed Lead Plaintiffs Shawn Cunix and Elizabeth Alexander ("Plaintiffs") brought this action against Defendants Aphria Inc. ("Aphria"); Victor Neufeld; Carl Merton; Cole Cacciavillani; John Cervini; Andrew DeFrancesco; and SOL Global Investments Corp., formerly known as Scythian Biosciences Corp. ("Scythian"), asserting claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b), as well as Section 20(a). (Am. Compl. for Violation of the Fed. Security Laws (Amended Complaint or "Am. Compl."), ECF No. 81.) On September 30, 2020, this Court granted motions to dismiss by Defendants Cacciavillani, Cervini, and DeFrancesco. (September 30, 2020 Order (ECF No. 108); *see In re Aphria, Inc. Sec. Litig.*, No. 18 Civ. 11376 (GBD), 2020 WL 5819548 (S.D.N.Y. Sept. 30, 2020)). Thus, only claims against Defendants Neufeld, Merton, and Aphria remain.[1] On January 28, 2022, Plaintiffs filed a motion for class certification pursuant to Federal Rule of Civil Procedure ("FRCP") 23 which the Defendants opposed. (Motion to Certify Class, ECF No. 169.)[2] Plaintiffs' proposed "Class" or proposed "Class Members" includes "all persons or entities who purchased

---

[1] Defendant Scythian has yet to appear in this action.

[2] Plaintiffs also filed a motion for oral argument (ECF No. 176) which is now moot.

1

or otherwise acquired Aphria securities on domestic exchanges or in domestic transactions between July 17, 2018 and April 12, 2019, inclusive [the "Class Period"], and were damaged thereby." Plaintiffs' motion for class certification is GRANTED.

## I. LEGAL STANDARDS[3]

### a. Class Certification

A putative class must satisfy the "four prerequisites set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy" to be certified as a class. *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12 Civ. 03852 (GBD), 2015 WL 10433433, at *2 (S.D.N.Y. Sept. 29, 2015). "In addition to the four factors enumerated in Rule 23(a), there is an 'implied requirement that the membership of the class is identifiable and ascertainable.'" *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 203 (S.D.N.Y. 2018) (citation omitted). Class certification must also be appropriate under one of the three subdivisions of Rule 23(b). *Brown*, 609 F.3d at 476. Here, Plaintiff seeks certification under Rule 23(b)(3), which applies when a court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3).

---

[3] The Court assumes familiarity with the facts in this case as this is the fourth Memorandum Decision and Order issued thus far.

2

## II. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULES 23(a) AND 23(b)(3)

### a. The Proposed Class Satisfies Rule 23(a)

Numerosity requires that a proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible," and "[c]ourts have not required evidence of exact class size or identity of class members." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Courts in the Second Circuit presume numerosity when a proposed class is at least 40 members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1994). Here, as Plaintiff asserts, 25.27 million Aphria shares were traded each week on average during the Class Period and there are at least thousands of class members. This is "significantly above the 40-plaintiff threshold ordinarily employed by district courts in this Circuit." *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*, No. 19-CV-06004 (ALC), 2022 WL 986071, at *3 (S.D.N.Y. Mar. 31, 2022). This element is satisfied.

The commonality requirement requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element "requires the plaintiff to demonstrate that the class members have suffered the same injury. It is a 'low hurdle.' In securities fraud suits, the requirement is met when plaintiffs allege that class members have been injured by similar material misrepresentations and omissions." *In re J.P. Morgan Chase & Co. Securities Litigation*, 2015 WL 10433433 at *3 (citations omitted). Such is the case here. There is no allegation that certain proposed Class Members were injured by one set of material misrepresentations and others were injured by another set. This low hurdle has been cleared. *See also Iowa Pub. Employees' Ret. Sys. v. Bank of Am. Corp.*, No. 17CIV6221KPFSLC, 2022 WL 2829880, at *16 (S.D.N.Y. June 30, 2022) ("Because the predominance criterion is far more demanding than the commonality requirement,

when plaintiffs move for certification of a class pursuant to Rule 23(b)(3), Rule 23(a)(2)'s commonality requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement of predominance.") (citation omitted).

Typicality requires that "the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (citation omitted). "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*, 2022 WL 986071, at *4 (citation omitted). Here, the Amended Complaint alleges that Plaintiff Shawn Cunix purchased Aphria securities on the New York Stock Exchange at artificially inflated prices during the Class Period and suffered damages because of Defendant's conduct. As Plaintiffs point out, these claims are "virtually identical" to the proposed Class claims.[4]

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the class." In assessing this requirement, courts make two principal inquiries: "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class; and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 35 (2d Cir. 2009) (citation omitted); *see also In re J.P. Morgan Chase & Co. Securities Litigation*, 2015 WL 10433433 at *3. Again, Plaintiffs' claims are "virtually identical" to the Class claims and thus, as Plaintiffs assert "directly aligned with the

---

[4] Proposed Lead Plaintiff Alexander bought Aphria stock in September and October 2018 when it was only traded on the Toronto Stock Exchange ("TSX") or over-the-counter ("OTC") market. (Declaration of Elizabeth Alexander ("Alexander Decl."), ECF No. 121, Ex. A; Am. Compl. ¶ 20.) Discussion of Proposed Lead Plaintiff Alexander's satisfaction of this requirement is discussed in section II(f) of this decision.

4

interests of the Class." (Pl. Memo. of Law in Support of Mo. for Class Cert. ("Pl. Br.") at 11.) This Court finds Plaintiffs' counsel, Levi & Korsinky, adequate to represent the Class.

The proposed Class easily satisfies the Rule 23(a) requirements.

### b. Implied Requirement of Ascertainability

Ascertainability "demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. Ascertainability is satisfied where a class is identified by subject matter, timing, and location." *Vida Longevity Fund, LP*, 2022 WL 986071, at *5 (quoting *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). "A class is sufficiently ascertainable where it includes persons who acquired specific securities during a specific time period … in domestic transactions because [t]hese criteria – securities purchases identified by subject matter, timing, and location – are clearly objective." *In re Petrobras*, 862 F.3d at 269. The proposed Class definition is limited by time period, specifies Aphria securities, and only includes members who purchased or acquired on a domestic exchange or transaction. (Pl. Br. at 4.) This requirement is satisfied.

### c. The Proposed Class Satisfies Rule 23(b)(3)

#### i. Predominance

A class qualifies for certification under Rule 23(b)(3) if it meets the prerequisites of Rule 23(a), and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d

537, 547 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Vida Longevity Fund, LP*, 2022 WL 986071, at *4 (citation omitted).

To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5(b), Plaintiffs must prove that they relied upon Defendants' misrepresentations or omissions when purchasing the security. Here, Plaintiffs seek to satisfy the reliance element via the "fraud-on-the market" presumption. (Pl. Br. at 14.) To do so, Plaintiffs "must prove, *inter alia*, that the security traded in an efficient market. . . ." *In re Vale S.A. Sec. Litig.*, No. 19CV526RJDSJB, 2022 WL 969724, at *2 (E.D.N.Y. Mar. 31, 2022).

As detailed by both parties, courts follow the five factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) to assess an efficient market: (1) the average weekly trading volume of the security; (2) the number of analysts following the security; (3) the extent to which market makers traded in the security; (4) the eligibility of the issuer to file an SEC Form S-3 or F-3; and (5) a demonstrated cause-and-effect relationship between unexpected, material disclosures about the company and changes in the security's price. *Id.* at 1286-1287 (citing *Waggoner v. Barclays PLC*, 875 F.3d 79, 94 (2d Cir. 2017)). Courts also consider the three factors set forth in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001): (1) market capitalization of the company; (2) bid-ask spread of the security; and (3) percentage of the security not held by insiders. *Id.* Cammer factor five is referred to as a "direct" measure of market efficiency, while the other seven factors are "indirect" indicia of efficiency. *Waggoner*, 875 F. 3d at 94. Importantly, when determining whether a plaintiff has proven market efficiency, a district court should not "view

direct and indirect evidence as distinct requirements and should, instead, conduct a holistic analysis based on the totality of the evidence presented. . . the burden to prove market efficiency is not an onerous one." *Petrobras*, 862 F.3d at 277-278.

To establish market efficiency, Plaintiffs utilized the expertise of Chad Coffman, an economic consultant who detailed his analysis in an expert report. (Pl. Br. at 16; Decl. of Chad Coffman, ECF No. 174, Ex. 1 ("Coffman Report")). In opposition, Defendants contend that Mr. Coffman's report "fails to support numerous key factors relating to market efficiency. . . ." (Defendants Mem. of Law in Opp. to Pl. Mo. for Class Cert. ("Defs. Opp. Br."), ECF No. 194, at 7.) In general, Defendants assert that Plaintiffs have failed to prove *Cammer* Factors Two, Three, and Five.

As an initial matter, Defendants' opposition is not based on the opinion of a rebuttal expert. *Compare In re Vale S.A. Sec. Litig.*, 2022 WL 969724, at *3 ("The record in this case reveals a 'battle of the experts' on the issue of whether the Vale securities traded in an efficient market."); *In re Teva Sec. Litig.*, No. 3:17-CV-558 (SRU), 2021 WL 872156, at *2 (D. Conn. Mar. 9, 2021) ("In opposition, the Defendants submit reports from three experts of their own. . . ."); *In re Glob. Brokerage, Inc.*, No. 17-CV-916 (RA) (BCM), 2021 WL 1160056, at *20 (S.D.N.Y. Mar. 18, 2021) ("Defendants and their expert. . . ."). Instead, they only point to proposed insufficiencies in the Coffman Report.

Specifically, Defendants' arguments, that analyst reports and market makers—the second and third *Cammer* factors—do not support an efficient market, are unpersuasive. There were over 100 reports on Aphria stock—a fact Defendants do not dispute—and, as other courts in this Circuit have reasoned, stocks on the New York Stock Exchange ("NYSE") tend to satisfy the third *Cammer* factor. *See In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 100 (S.D.N.Y. 2009)

7

(holding that stocks traded on the NYSE "satisfy this factor"); *see also Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 95 (S.D.N.Y. 2018). With regards to the Aphria stock traded before it was listed on the NYSE, the stock was listed on the TSX and Mr. Coffman analyzed the price of the stock on the TSX and on the OTC market. Defendants do not put forth any evidence to contradict Mr. Coffman's analysis, they only argue that Mr. Coffman failed to analyze select issues. (Defs. Opp. Br. 12-15.) This Court accepts Mr. Coffman's conclusion that "by trading on multiple exchanges, the market for a given security is indeed more efficient than if it only trades on a single exchange." (Coffman Report, p. 12.) Further, an inefficient OTC market would "serve only to rebut the presumption of reliance as to those U.S. investors who had traded [Aphria] securities in the OTC market rather than on a foreign exchange. It does not impact the availability of the presumption in the first instance." *In re Parmalat Sec. Litig.*, No. 04 MD 1653 (LAK), 2008 WL 3895539, at *10 (S.D.N.Y. Aug. 21, 2008).

Regarding *Cammer* factor number five—empirical evidence of Aphria's market efficiency—Defendants point to proposed deficiencies in the Coffman Report and discrepancies in Mr. Coffman's deposition. Had Defendants utilized their own expert to perform all the missing analyses they argue the Coffman Report contains, Defendants' opposition would have been stronger. Moreover, Defendants rely heavily on the analysis of a District of Arizona court in *Di Donato v. Insys Therapeutics, Inc*, 333 F.R.D. 427, 442 (D. Ariz. 2019). (*See* Defs. Opp. Br. at 6-12.) Defendants' reliance on this case is particularly futile as the court in Arizona determined that the stock traded in an efficient market and ultimately certified the class. *DiDonato*, 333 F.R.D. at 442, 448. Notably, the court in *DiDonato* detailed the practice of the Second Circuit which does not require the fifth *Cammer* factor to find market efficiency:

> The Second, Fourth, Fifth, and Eleventh Circuits have instructed that the *Cammer* factors serve only as a guide for determining market efficiency to be applied in a case-by-case basis in addition to other considerations and that, while important in certain cases, the fifth *Cammer* factor is not a mandatory prerequisite in every case for finding market efficiency. Although these circuit courts require proof and thorough analysis of market efficiency in context, they disclaim rigid adherence to a bright line test. The parties have not cited, and the Court has not found, contrary authority.

*Id.* at 438 (citations omitted); *see also Waggoner*, 875 F.3d at 97.

Without any direct rebuttal evidence, and when considering all the evidence presented here of market efficiency, the Court finds that Aphria stock traded in an efficient market throughout the Class Period.

### ii. Superiority

Plaintiffs must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, a court examines Rule 23(b)(3)'s nonexclusive list of factors for consideration. The manageability of a class action is the most important of these factors. *Vida Longevity Fund, LP*, 2022 WL 986071, at *5. Here, Plaintiffs outline why a class action is superior—the cost of individual actions would be prohibitive and wasteful as there are likely thousands of class members. (Pl. Br. 23.) This element is easily met here.

### d. At this stage, the Class Period will end on April 12, 2019

Defendants argue that December 3, 2018—the day the Hindenberg Report was released should be the last day of the class period. "If there is 'no substantial doubt as to the curative effect' of the announcement, the class period may be shortened." *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019) (citation omitted) (Class period for Securities Act class shortened because plaintiffs alleged that a 10-Q, issued before the original end of the class period,

"'disclosed' and 'revealed' the putatively omitted and misstated information" about defendants.)

Here, Plaintiffs have alleged that:

> (i) the Hindenberg Report "disclosed" board member conflicts of interest, the "represented value of the LATAM Assets was not commensurate to the substantial consideration paid by Aphria for LATAM Holdings", Aphria insiders had obtained an indirect distribution of Aphria shares, and that Aphria did not have adequate disclosure controls and procedures; (Am. Compl. ¶ 79.)
>
> (ii) "the sharp and substantial decline in the price of Aphria shares demonstrates that the market's assessment of the credibility of the Hindenburg Report's and QCM Presentation's detailed and corroborated findings and allegations of wrongdoing by Defendants"; (Am. Compl. ¶ 80.)
>
> (iii) the allegations in the Hindenberg Report were "accepted and incorporated by numerous equity analysts"; (Am. Compl. ¶ 81.)
>
> (iv) Defendants' responses to the Hindenberg Report "failed to substantively address many of the issues of malfeasance and self-dealing that the Hindenburg Report raised"; (Am. Compl. ¶ 83.)
>
> (v) "Aphria's securities prices decreased as investors and the market considered the Hindenburg Report and QCM Presentation as well as Aphria's responses and various analyst reports. The market responded quickly and decisively in response to this news entering the market and partially correcting Defendants misstatements and omissions. The information disclosed in the Hindenburg Report and QCM Presentation caused the price of Aphria stock to decrease significantly. From a closing price of $7.90 per share on November 30, 2018, Aphria's stock plummeted to $4.51 per share on December 4, 2018 representing a total market capitalization loss of more than $220 million." (Am. Compl. ¶ 189.)

Plaintiffs now, however, argue in their reply briefings that the Hindenberg Report was not a "clear and unambiguous" disclosure and that the truth, that they will prove at trial, was revealed "through a serious of partial corrective disclosure culminating on Monday, April 15, 2019. . . ." (Pl. Reply Memo. of Law in Support of Mo. for Class Cert. at 8.) Indeed, there were a series of publications regarding Aphria after the Hindenberg Report was released, (*see* Am. Compl. ¶¶ 85-102, 175-178; 190-191.), and Aphria's press release in response to the Hindenberg Report says that the report has "misrepresentations and distortions. . . ." (*Id.* ¶ 85.) On the other hand, Defendants accurately assert that many of Aphria's purported misstatements made after December

3, 2018 were allegedly false for the same reasons revealed by the Hindenburg Report. (Opp. Br. at 17.) Similarly, it is not clear from the Amended Complaint whether any of the subsequent publications disclosed any new information not already revealed by the Hindenberg Report. Finally, the stock price—which apparently rose after December 3, 2018—fell from $10.10 on April 12, 2019 to $8.60 on April 15, 2019.

It can not be said that "no substantial doubt" exists as to the curative effect of the Hindenberg Report. Thus, this factual dispute is inappropriate for the Court to determine at this time. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15CV1249, 2017 WL 2062985, at *7 (S.D.N.Y. May 15, 2017) (quoting *In re Fed. Nat. Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*, 247 F.R.D. 32, 39 (D.D.C. 2008)) ("Whether a particular announcement ... actually cured a prior misrepresentation is ... a sensitive issue to rule on at this early stage of the proceedings, because it comes so close to assessing the ultimate merits in the case.") At this stage of the proceedings, the Class Period will remain between July 17, 2018 and April 12, 2019, inclusive.

### e. Elizabeth Alexander Lacks Standing to Represent the Class

Finally, Proposed Lead Plaintiff Alexander failed to sufficiently demonstrate that she purchased Aphia shares in a "domestic transaction" and, therefore, lacks standing to represent the Class. "[S]ection 10(b) does not apply extraterritorially but only to 'transactions in securities listed on domestic exchanges[ ] and domestic transactions in other securities.'" *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018) (quoting *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010)). A plaintiff need only allege facts leading to the "plausible inference" that she "incurred irrevocable liability within the United States to take or pay for a security or that the seller incurred irrevocable liability within the United States to deliver a security." *Id.* "To determine whether irrevocable liability was incurred within the United States, courts look to the terms, timing, and

place of the parties' contracting and liabilities thereunder. Relevant facts concerning the formation of the contracts, the placement of purchase orders, ... or the exchange of money should be considered." *Id.*

Here, Plaintiffs argue that Proposed Lead Plaintiff Alexander purchased shares of Aphria stock—through her U.S. based broker, TD Ameritrade—from U.S. market makers that "only have offices in the United States." (Pl. Br. at 9.) In her declaration, Proposed Lead Plaintiff Alexander included a letter form TD Ameritrade summarizing the quantity and price of her Aphria trades with Citadel Securities, G1X (SIG), and Canaccord Genuity. (Alexander Decl. at Ex. A.) Even with the additional documents submitted in the declaration, the facts are insufficient to incur 'irrevocable liability' in the United States. There is no information regarding where and on what terms there was a "meeting of the minds" or "prior acts" obligating the trading parties to one another. *See In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 453, 458 (S.D.N.Y. 2013); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 189 n. 33 (2d Cir. 2014) ("[W]e have never held that the placement of a purchase order, without more, is sufficient to incur irrevocable liability, particularly in the context of transactions in foreign securities on a foreign exchange."); *Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *12 (S.D.N.Y. June 21, 2018) ("There is no information in the complaint, however, regarding [p]laintiff's location when he agreed to the terms of [the] transaction, or the place in which the transaction took place.")

Thus, Proposed Lead Plaintiff Alexander has not shown how she engaged in a domestic transaction under the Exchange Act and therefore can not serve as a class representative.

## CONCLUSION

Plaintiffs' motion for class certification is GRANTED. This Court hereby certifies the following class:

All persons or entities who purchased or otherwise acquired Aphria securities on domestic exchanges or in domestic transactions between July 17, 2018 and April 12, 2019, inclusive, and were damaged thereby.

Shawn P. Cunix is appointed as Class Representative and Levi & Korsinsky is appointed as Class Counsel.

The Clerk of Court is ordered to close ECF Nos. 169 and 176, accordingly.

Dated: New York, New York
August 30, 2022

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge